Good morning. You may proceed. Thank you, Your Honor. Good morning, and may it please the Court, I'm Elizabeth Newman, representing Mr. Palk. And I'd like to begin by discussing the centrality and the relevance of the medical records in this case. This was a case in which there were no witnesses to the allegations, to the assaults that K.A. alleged Mr. Palk had committed against her. And it was clear that the defense goal at trial was to show that she wasn't telling the truth about what had happened. Now, the records have information that's relevant to that defense. They weren't perhaps as directly connected to the defense as in some other cases that this Court has decided, like the Lunbury case, as to which I wrote a 28-J letter back in May, or Murdock v. Castro. But nevertheless, they were quite central to this defense because the defense was she's lying, and this was probative evidence that tended to show or could have been or that tended to show that perhaps a third party had committed these assaults against her. Well, the trial court said the trial court has reviewed all the subpoenaed documents, which your side had, and finds no document which would support any claim relating to a crime of violence or a fabrication of criminal acts made against the defendant or victim, that there were never any self-inflicted injuries, on and on and on. There's not to be any indication that she misused or over-medicated herself. Is that wrong? It's partly wrong, Your Honor, and it's also wrong in a larger sense. The way in which it's partly wrong is that the medical records actually did suggest that K.A. had been a consumer of illegal drugs. Yeah, but that's pretty tangential. I'll give you that that's tangential, but it's not that it's completely incorrect. Wasn't that an evidentiary ruling? And wouldn't that even at that level be subjected to an abuse of discretion standard? And here we are in Federal court on a habeas. Right, Your Honor. But the question then on habeas, I hope this is answering the Court's question, is did the State court decision that the trial court's ruling was not an abuse of discretion constitute a ruling that was contrary to or an unreasonable application of controlling Supreme Court law, which was in turn, and I'm sorry that this is a very long sentence. I know. It's very difficult. Right? Which was in turn that Mr. Polk's rights to present a complete defense and his right to confront and cross-examine K.A. were infringed. Okay. Let me ask this question. How would the excluded medical records have changed your defense or helped you put on a defense? How would they have helped the defense? Yes. All right. Well, the defense was that K.A. was not telling the truth. And to that end, what counsel actually did at trial was try to impeach K.A. as to three of the four events that she alleged by showing what turned out to be not very significant discrepancies between what she was saying in the trial court and what she might have said at the preliminary hearing, what she had said to a doctor and so forth. And as to the fourth, the trial counsel impeached her with evidence from Mr. Polk's family and his friends that the Father's Day assault simply could not have taken place as K.A. said it had because the house was not acting as she said it did. Why were the medical records necessary to falsify that if you had that evidence? The medical records gave or would have given counsel another half of that defense that K.A. was lying. They would have been useful to show or to suggest to the jury that K.A. having been beaten in the past by a boyfriend who was plainly not Mr. Polk might have been beaten in these events also by that very same ex-boyfriend who was plainly still part of the picture. Boy, is that speculation on top of conjecture. Well, I thought. Might have been. But there's no tie. It's just might have. Not was. I mean, if you had shown that she made false complaints against boyfriends before or something like that, that'd be a total winner. But here it's just absolute conjecture because she may have been the victim of domestic violence before. Well, I'm not sure that I would actually phrase it that way, Your Honor, because. You're the one that said might have shown. No, that she might have been the victim of domestic violence before. There you go. Might have been. Might have been again. No, Your Honor. The medical records show that she alleged that her boyfriend had beaten her. Compare that to the fact that that was the person who did it this time? Well, but it's clear that an ex-boyfriend was still in the picture. Was the defense attorney subpoenaed the ex-boyfriend and say, did you beat her up this time? Your Honor, that's another. This is so speculative. But that's another advantage of the medical records, Your Honor, which is that the other ways of getting to this kind of defense theory depended on either getting K.A. to admit it on the stand, which surely wasn't going to happen, or putting Mr. Polk on who didn't testify for reasons. And even if he had testified that he didn't do it, but he knew that some other ex-boyfriend had done it, the jury couldn't dismiss that. Do you want to infer from this evidence that some other boyfriend made this attack? That's close to hallucinatory. Well, I'm sorry you see it that way, Your Honor, because to me it seems not at all hallucinatory. She had a boyfriend who beat her, and now she's alleging that a boyfriend beat her. It was the old boyfriend? Why wouldn't that be a decent defense, Your Honor? Why wouldn't that be a decent defense if the only defense possible is that she lied? Part of the problem is here we are on habeas. I recognize that, Your Honor. With all of these hurdles that are in between that and where we are. The problem, and also it's really commonly known that women who are battered by one abuser are typically battered by other abusers and may have been battered by their own family members and it creates victims and ties. So it's not really very probative even that she went from one boyfriend who abused her to another one. I see the Court's point, but I think it's an extremely, I think it's a potential defense that was certainly more complete than the defense that was actually offered, which is she's lying but we don't know why. And the Davis case, to get back to, to get into some Supreme Court precedent, Davis says that the defense that was proposed to be offered in that case but that was not permitted to actually be offered might have been speculative, might have been speculative, but that it was up to the jury to credit it or not credit it. But here you had the materials were actually given to the judge and the judge said, they don't have your case. These medical records do not contain evidence. With respect, Your Honor, that's not precisely what the judge said. The judge said they don't show that she inflicted wounds on herself. They don't show that she ---- Kagan. Well, it depends. It seemed for me in the transcript, it seemed like the defense asked the judge to look at four categories of information. And the judge looked at those four categories of information and reported that nothing met those four categories. Correct, Your Honor. But I think that to confine your ruling to that fact is to have required defense counsel to be clairvoyant about what these records might contain. Defense counsel wanted to show that K.A. was a liar. That's clairvoyant. The defense counsel had the records. No, defense counsel never saw these records. I saw these records. Neither defense counsel nor the government. I'm under a mistake now. I thought the defense counsel had them. No, the defense counsel subpoenaed the records, but since K.A. had a privacy interest in them ---- So they were turned over to the court and they were okay. They were turned over to the court and the court said, I'm not going to give them to you because I've looked at this. Precisely. Precisely. Other than the one report regarding the doctor saying perhaps this injury was from drug use, which the trial court determined was not evidence, was there anything specific in the record other than the two crimes of violence? Was there anything that would impeach her credibility in the record? No, Your Honor, that I have seen, no. Okay. No. But ---- So it's solely the evidence that she had been beaten by someone else previously that you're focusing on. Right. But the reason that the only reason the records were in front of the trial judge to decide what to give, if anything, to the defense was that K.A. had a privacy interest in her medical information. But ---- Are you saying that the privacy interest and the fact that the trial court reviewed the files rather than just handing them over, is that the violation of the Supreme Court rights that you're focusing on? No, Your Honor. The Supreme Court, I think, has been clear. I believe it's in Ritchie that that's the correct procedure to engage in. But the trial court seemed to confine its review of the records to the four specific categories of information that defense counsel mentioned. But think of it this way. Suppose the records had shown that K.A. had been found to be incompetent or that K.A. had been diagnosed as a sociopath but had never taken any psychotropic medication, which would have fallen under the four categories. Well, did you know the records? Do they show that? No, they don't. But ---- Okay. So here we are. No, but you can ---- What I'm saying, and probably very unartful, Your Honor, is that to confine your ruling in this case to ---- rest your ruling in this case to ---- on the conclusion that no rights were violated because defense counsel asked for these four categories of information and basically the records didn't yield anything that fell into them, I think is ---- it would be incorrect. Because the grand category that all of these four categories went to was I want information that will help me show that K.A. is lying, that my client beat her up. And there was information in those medical records that would have tended to show that K.A. was lying, that Mr. Polk beat her up because they showed that someone else had beaten her up. Okay. So the central theory is that because there was evidence that somebody had beaten her in the past, that made it more likely that she was lying when she said that this person had beaten her up in the present. Is that the central theory? Well, yes, because it's even more than that she was lying. It was a way of discrediting the prosecution evidence, which was her testimony, which under Supreme Court precedent he had a right to try to do. What was the medical evidence that she had been beaten? There were two incidents, Your Honor, that were described in the medical evidence. And in one ---- well, two and a half. In one, she reports that a boyfriend punched her in the back. I mean, she said, I've been beaten. And in another, she reported, I believe, that a boyfriend pushed her and hit her hand, and when she fell, she hit her head. These are in the sealed records, A39 and 6, 7, 10, and 15. And was there any in the charges against this person, was there any corroborating medical evidence from doctors, nurses, or things like that? Well, there was evidence taken at trial from a doctor who saw her on ---- after the fourth incident that was alleged that did substantiate that she suffered the injuries that she said had been inflicted. And what were the injuries? That was October 7th. That was that he ---- that was that someone, she said Mr. Polk, and the jury found that to be true, had karate chopped her neck as she was driving and had ---- So there was medical evidence that she had been karate chopped? There was soft tissue damage to her neck, which was red. And part of the theory was that she had done that to herself? Either one of the previous boyfriends did it to her or she'd done it to herself? That put that ---- that a third party, who was not Mr. Polk, who had beaten her in the past, had committed this offense. So the argument was that she karate chopped herself in the neck? No, Your Honor. The defense theory would have been that an ex-boyfriend, who was still in the picture, as this case showed, in fact, he lived only about eight houses down from Mr. Polk, had inflicted this injury against her just to see an alternate. Did the defense counsel know this person's name? Yes. Did they subpoena him? No, Your Honor. He, having shot Mr. Polk in the chest some months earlier, would not have been a good witness to call. What a life. Yes. Thank you, counsel. Thank you, Your Honor. May it please the Court, Deputy Attorney General Mary Sanchez, on behalf of the warden. Counsel for Petitioner states that the medical records are central to Mr. Polk's defense. That is absolutely not the case. There's over 500 pages of these medical records that were subpoenaed and that we both reviewed, out of which there were two incidents involving an ex-boyfriend where she went to the hospital and her complaint was she was beaten by this ex-boyfriend. At the time, of course, it was her boyfriend. But there were no indications in these records that these were false allegations. She went to the hospital. She made her report. The hospital confirmed that there were injuries to her. The police, I believe, were called, and I think the hospital records indicate that. There's absolutely nothing in those records that can serve for any impeachment for the victim in this case. Nothing to show false charges against other people or self-inflicted injuries and then claims of domestic violence? That's correct. There was nothing showing that she had made any false allegations. What the records show is that this is a woman who has a pattern of picking inappropriate boyfriends who beat her. If anything, these records tended to corroborate her testimony. She gets beaten in the past. She goes on to a new boyfriend. She selects another beater. So, if anything, the records were favorable to her testimony. Now, since the records don't serve for any impeachment value, it can't be said that the trial court acted in an unreasonable manner when it stated that it would not allow the defense access to the medical records of the victims. That's a completely reasonable judgment in view of the tangential value of these records. The state court did not rule in an unreasonable manner, and I would urge this court to show deference to the findings of the state court. Unless the court has any other questions, I'll submit. All right. Thank you, counsel. Park B. Harrison is submitted. United States v. DECA has been submitted on the briefs, and this session of the court will adjourn for today. All rise. The clerk will ascend the center.
judges: Trott, Wardlaw, Ikuta